Good morning, and may it please the court. I'm Sumitna Murchandani here today appearing on behalf of appellants Miss Paulette Martin and Mr. Luis Manguel Sr. This is the second time we're coming before this court in Miss Martin's case. The first appeal in this case two years ago resulted in an order by this court directing the district court to consider Miss Martin's fully reduced sentence. The court did not follow that directive. Instead it denied relief once again, denied relief from life sentence to 30 years without mentioning, acknowledging, let alone addressing any of nine distinct arguments she had raised in favor of her relief. One being that she's 72 years old. Second, that her health is declining and that the BOP is unable to take care of her as we, the papers we submitted, the BOP's own report on its inability to care for aging inmates. Her history is a victim of domestic violence which led to her drug addiction which led to her offense. The fact that she has no record of violence before this case or during this case. No weapons. She was a criminal history category one. She had an exceptional BOP record with zero infractions and she after passed her GED. She, because of the life sentence, is blocked from participating in many BOP programs. So if she were to survive a 30-year sentence which is very doubtful, if she were to survive it at least she would also get some additional programs that she could qualify for and move closer to home because she's very far from her family. In this case there is a claim. Yes. Not one for Mr. Manguel. Yes. Can't we under Chavez Mesa find that based on the context and the record that the judge had a reasoned basis to make the decision in your case? You can definitely rely on the original sentencing transcript and but whether it gives confidence that there was a reasoned the sentencing transcript itself the majority of the transcript had to do with the restitution order. There was maybe a very brief period where they talked about the 3553a factors in passing and interestingly enough even during the original sentencing the district court judge did not address her age, her health, her non-violence, her lack of criminal history, her history as a an abuse victim, her addiction. None of that was addressed. So if this was a case like LaGree or Smalls which this court had and there was an original record in which these matters were fully vetted and considered and there was you know a sentencing transcript showing they had been discussed and in both LaGree and Smalls a very short period of time between the consideration at least in LaGree it was only a three-year difference and in Smalls it was a 15-year difference but three years since the last 3582 motion so they had been all these factors had been brought up again. In our case it's more like Hardy and McKenzie in that a decade passed so even to the extent that the original record provides some indication of what the court thought the 10-year period is a huge. Everything changes in that 10 years too according to Pepper. The three sentencing factors of protection of the public, rehabilitation and deterrence. The the strongest evidence of what the person you know that presents themselves today is is based on today. Now all of those factors were analyzed in depth in the submissions. The government responded with basically repetitions of the seriousness of the offense which we do not dispute, the amount of drugs involved which was huge but no response at all to any of the nine other factors that we raised. Just like the government did the court also issued a very brief opinion in which it said in a conclusory statement it had considered all of the 3583 factors but this but the seriousness of the offense cannot be overstated without any mention of any of the nine factors, any of the attachments, any of the BOP progress reports which Ms. Martin is housed that she should be a recipient of relief. Nor did the court say why a 30-year term wouldn't be sufficient but not greater than necessary in this case. Now the same goes for Mr. Mangual. Mr. Mangual is slightly different in that the court did give a reduction but again there was no addressing of any of the nine factors and the judge order said I'm convinced that comparable reductions are favored and then cited Fennell. In Fennell this court talked about a comparable reduction from the low end of the guideline range as a downward departure for substantial assistant. There's no such thing as a comparable reduction in the normal 3582 context. That was completely taken out of context and Chavez Meza has since basically rejected the idea that you automatically give a sentence at the same point because like we know in Pepper things change and in more than a decade now. But in Martin's case there wasn't this comparable. There was no reduction anywhere. And there wasn't any discussion about this issue. So this issue might provide a basis for Mr. Mangual. In fact Mr. Mangual's case is exactly like McKenzie and McKenzie the district court gave a reduction from the high end of the original guideline range to the high end of the amended range. That's it. No explanation. And even though that was given without this you know there wasn't the reliance on Fennell or anything like that, this court reversed and said but you can't just assume. You can't go from high end to high end. Even though you gave relief we need to know why you didn't give greater relief. You have to explain the extent of your reduction. 3582 specifically references 3553A. So the touchstone for how much relief to grant is 3553A. And there's nothing anywhere in the court's orders in each of these cases either that they took seriously any of the arguments that were made. Informing this I think is this court's line of cases. We agree that this is not an original sentencing. This is a limited proceeding. We're not saying that this has to be the full-blown original sentencing, but the court needs some evidence that the arguments were considered. And when you look at the Blue, Carter, Slappy, Lynn cases that this court decided, they say consider means an individualized sentence based on the specific person and the facts of the case. A perfunctory recitation of the arguments is not enough. There has to be some individualized consideration for that person. I don't even know what to tell my clients. I don't know what to tell Ms. Martin why the court didn't think she should get relief. I don't even know what to tell her why the government doesn't think she should get relief because they still haven't explained why none of these factors would justify a 30-year sentence, at which point she would be 84 years old. And especially considering that her record has been exceptional. Even though she had at the time a life sentence with no hope of relief, she wrote in a letter to the judge that she was broken and devastated and her life had effectively come to an end. And she was older when she was sentenced. I don't want to gloss over that. She was in her 60s at the time. But instead of giving up and throwing her hands up... You can see the group you're talking to. You've been her prime. Yes, yes. But she said she found her purpose in life by serving as a mentor. And she has mentored... I've gotten dozens and dozens of letters from people who were her students who said that she had changed their life. Now I think that speaks volumes to somebody who has been thrown away. And literally the, you know, the key was thrown away. But she did not give up. She has proven herself to be very deserving of relief. And all we ask... It's pretty low burden. We're not asking for a great deal. We're just asking for some evidence that the district court read, considered, viewed these arguments in the context in which they were brought. And didn't just give a perfunctory recitation of the government's statement of the offense, which was now 12 years ago, without anything else. So if Judge Titus, if I understand your argument, he relied on one thing, the nature and circumstances that this was a great big drug, lots of drugs. And if he had gone down these other things and said, I don't find this persuasive, I don't find this persuasive, I don't find this persuasive. What I find persuasive is the nature and circumstances of her offense. I take your argument is that would be sufficient. I don't know if a perfunctory recitation would be sufficient. It would be sufficient. These are busy people. And well, there's a lot going on. So what I'm trying to do is to figure out, you say it's not, you don't, you don't ask us to do what, and maybe we should, maybe we should require the same burden as an original sentence. But I just don't think that's going to apply. No, we're not asking for that. I'm saying in that case it would be sufficient if the court could explain why 30 years is not enough. Okay, so, so if he's, if she was a violent person or a person who had had a terrible record and said that she is a danger to the community, there's some reason why past the age of 84 or deterrence to the, to the, to the general community, we want to tell the public that even if you're in your 50s and 60s, when we say life sentence, we mean life sentence, you're never going to get out no matter how the truck in these many drugs. Yes. It's this quantity of drugs. I don't care how old you are, I don't care how sick you are, I don't care how perfect your record is. If he had said that, that would be at least some balancing of the factors. What we have is no balance. What we have is only consideration of one 3553A factor and a complete ignoring of all of the others. Does he have to go down, does he have to discuss each and every one of them? See, that's what I'm, I mean, I feel like if he discussed two factors, that wouldn't be enough. Three, four, I mean, I don't know where your argument goes. Well, it's not a number, I think it's inspiring confidence. If, if, if there were some sense, and, and I'm, perfunctory recitation is, is what this court used. If there's a sense that they were actually taken into account, and it might just be even a listing, but if it was done in a way that doesn't show they were actually considered, I mean, I think you might know when you see it. If, if you, and it's really not up to, to me, it's, it's also for appellate review. The reason we ask courts to explain their sentences is to inspire confidence that the sentence was fair and to give you the ability to review the record. If the district court judge says enough that you feel confident that the factors were considered, that's enough. And I think the question is, how much do you demand? I, we submit that this is woefully insufficient. And I know that time is not endless, but I used to practice civil litigation in a firm, and I can tell you that civil matters, like the one we just heard, with lots of dollars at stake, great, great care is given to these, to these matters. This is a human life. This is a nonviolent drug offense and a human life. And to expect so much less, I think, is, is, is not what the Sentencing Commission wanted when they passed 3582. Did Ms. Martin plead guilty? She did not. She went to trial. Mr. Manguala pled guilty. I knew he had, yeah. Okay. Yeah, no, she, she, she did not accept responsibility at the time. Afterwards, she wrote, and this was many years later when she wrote the judge and said that she accepted the error of her ways. She had transformed herself. She was apologetic. I mean, obviously she's been through a lot for the past 12 years. And she's still in a very restrictive situation, despite all of the wonderful things she's done, and again, the support of her warden. So I'm not sure where the public danger that the government referred to comes from, but I, we submit based on the papers that she'd be quite an asset to the community. She probably could mentor a lot of young people outside, as she has done on the inside. Say, Mr. Manguala, he's 79 years old. His wife of 60 years just recently had two strokes and is in a nursing home, and he is the one who would take care of her. He also had nonviolent conduct, no weapons, minimal role. This was the 31 defending case. He was listed as number 25. He participated for an 18-month period in, in selling drugs, but there were no guns. There was no violence. He had a criminal history category, too. Mr. Manguala right now is at a camp, the lowest security camp, where he has an out-of-custody status. The BOP allows him to leave the perimeter of the institution because he is so trusted. Even though he still has several years left, he is allowed to leave the perimeter. I think that tells you what the BOP thinks of his potential danger to the community. Another factor that didn't come up anywhere is the cost, the cost of incarceration. We all know that there's overcrowding. There's an aging population, and the costs are staggering. As people get older, the costs go up even more. That is a very important factor in looking at what are we gaining from imprisoning senior citizens who are nonviolent against the $30,000 to $40,000 a year of warehousing. Unless the court has any further questions, I will reserve my rebuttal time. Thank you, Ms. McDonough. Thank you. Ms. Cobb. May it please the court. Good morning, Your Honors. Ellen Cobb on behalf of the United States. Did the United States oppose a sentence reduction? The government opposed a sentence reduction in Ms. Martin's case. In Mr. Manguel's case, the government agreed that Mr. Manguel was eligible for a reduction and recommended a sentence at the top of the guidelines as opposed to the bottom. And what was the basis of the government's recommendation with respect to Ms. Martin's case? The government initially made a two-part argument. Because at trial at Ms. Martin's 42-day jury trial, there was evidence of significantly higher drug quantities than the amount found in the PSR. So, in opposing, initially opposing the 782 reduction, the government argued that the quantities were so high that she wasn't eligible. The government alternatively argued that under 3553A factors, including danger to the public and nature and characteristics of the defendant, that Judge Titus should exercise his discretion and deny the reduction. Did she was a danger to the community? Is that what you're telling me? Yes. That's what the government argued? Yes. Were there any guns involved in her conviction? Well, her offense level was enhanced for firearms because… Someone else had guns. Ms. Martin was the leader of this massive organization, and her partner was found to possess drugs. And because she was in a leadership position, there was an understanding that she sanctioned and perhaps even required her people to carry guns. And violence is inherent in any large drug trafficking organization such as this one. And Judge Titus spoke extensively at Ms. Martin's original sentencing about the seriousness of the crime and her danger to the public. Is she eligible for the amendment, the reduction now? Ms. Martin… She is, isn't she? Judge Titus determined that Ms. Martin was eligible. And you didn't challenge that, right? You didn't appeal that decision? We did not. So you're stuck with that ruling? Well… Right? You're stuck with that? Well, Judge Titus determined that Ms. Martin was eligible. However, he exercised his discretion… I know. …and declined… Questions come in stages. The first one is, you didn't…here, that's the law of the case in that sense. You didn't appeal that? No, Your Honor. So she's eligible, notwithstanding what the government argued, correct? Correct. Now, why do you think the commission enacted the reduction? Well, the 782 reduction was enacted to lower the sentences that were applied to drug offenders. Because they were too high. Because they were too high. And that was for across the board, not just individuals. Just holistically, they were too high. They were draconian, right? I don't know that I would use the word draconian, however… Okay, draconian. You would, I know, obviously you couldn't concede. We'll use that word. Yes, we'll use that word. Let's say they were harsh, harsher than necessary. How is that? They found, correct? The Sentencing Commission did indeed lower the guidelines for drug offenses. And that was across the board. They didn't say, well, this person, that person. That was a macro decision, right? To lower the guidelines that are applied to drug offenses. Right. However… That was in the macro. Do you agree with that? I would agree with that, Judge Gregory. Okay, so now we come to an individual who now we know is eligible. Now we get to the micro, correct? Correct. Now, she was sentenced. She received a life sentence, right? Correct. So we already know that she was sentenced for all of her crime. What she did, what she was convicted of, right? We gave her a life sentence. That was the maximum sentence, correct? Correct, Your Honor. Now the question is whether or not she should get the benefit of what was given in the macro. Not because of her, but just in overall harsh sentences, right? So that's when we send it back and say you have to look at her individual factors, which are her non-frivolous arguments. And, right? Well, Your Honor… Was that the remand from this court? The remand? The initial remand? To consider all of the non-frivolous arguments for mitigating her sentence of life. Is that right? This court remanded Ms. Martin's case not to consider non-frivolous arguments and to consider all the factors, but simply because it was unclear whether Judge Titus determined whether she was ineligible or whether he exercised his discretion and whether it was warranted. It was unclear which… Under Dillon, there's a two-step process. The district judge first determines eligibility and then exercises his discretion to determine whether and to what extent the reduction is granted. We determined neither was done. We couldn't tell from the record whether either were done, right? So now we know the first step was she's eligible, correct? Correct. And now as to the next step, you have to follow our precedent, correct? Correct. And precedent… Black and Slappy and Blue in those cases, correct? Slappy and Blue do not apply to 3582C2 reductions. The precedent in this area is Smalls, Legree, Dillon, and Chavez-Mesa. But they have to be individual considerations, correct? Slappy and Blue… You said they don't apply. …apply to original sentencing. You said they don't apply. So you're, right? That's your position? Slappy and Blue do not apply to a 3582C2 reduction. A proceeding under 3582C2 is a limited exception to the rule that a court may not modify a term of imprisonment once it's imposed under Dillon. The Supreme Court said it's only a limited adjustment to an otherwise final sentence, not a plenary resentencing proceeding, certainly not a full sentencing. I agree. And generally speaking, it should be given. Generally speaking. In a sentencing, when a defendant has full constitutional rights. In an initial sentencing, a defendant has… No, no, no. I'm talking about the reduction should generally be given. Whether a reduction is given… 782 amendment, it should be generally given, correct? It's entirely in the discretion of the court. I know that. But generally, it should be given, right? How else would you carry out that macro demand, command? I cannot identify a single case, Your Honor, that says a 782 reduction must be given. No, no, no. I didn't say that. I didn't say that. Generally, it should be given. Obviously, it has to be individualized, but generally, that was the purpose of it. Otherwise, they didn't do this 782 and expect 90% of the time it would be not given, correct? Then it wouldn't reach what they were trying to do, deal with these harsh sentences. However, the discretion is entirely 100% in the… We understand your argument about concession, but I'm actually interested because we have now something coming out from the Sentencing Commission that tells us what we're supposed to do, and we generally follow that, right? That's a… And the district court, in its discretion, can deny it, right? But in general, it starts out with giving it, and then there are reasons for denying it, right? The court does not need to provide reasons for denying it. Under Legree, this court found that consideration of the factors is implicit in the court's ultimate ruling. A court does not need to engage in ritualistic incantation in order to establish its consideration of this issue. It is sufficient if the district court rules on issues that have been fully presented for determination, and in this case, Judge Titus could have merely checked a box under Chavez-Meza. However, he went further. He went above and beyond, and he issued memorandum opinions in both cases, which he did not have to do. Chavez-Meza found that a district judge in a very similar situation provided an adequate explanation by merely checking the box in a form provided by the administrative office of the courts, which certified that he had considered the petitioner's motion and taken into account the relevant guidelines, policies, and the 3553A factors. And when a judge certifies that he has done this, it is presumed to be true. So we have really no role as an appellate court, you say? The appellate court certainly has a role. What is it, just a rubber stamp? Well, here, we're looking at this case under the abuse of discretion stamp. Well, you just said you don't have to give a reason at all. Just check the box. That's what you said.  Chavez-Meza. That's what I'm saying. You're saying that the law is he or she just checks the box, and that's it. So an appellate court, rubber stamp. That's all we need, right? That was your urging us, right? You're here representing the government. Tell us what you said, rubber stamp, correct? Well, the appellate court— We have no intellectual duty at all in a jurisprudential role at all. It's just sort of check the box. We can check the box. We can hit the stamp. The appellate court has a duty to determine whether the district court abused its discretion. Okay. However, the appellate court cannot second-guess the choices that the district court has made. Obviously, what appellants here are asking for is a full-blown sentencing, and they simply are not entitled to that. Can I get in a little bit there and ask a question? I don't know if that position is there, but you'll learn it. Colleagues said, no, we're not asking for that. We're asking for at least just the comedy of just saying, listen, she'll be 84 years old if she received, what, 30 years' sentence, right? Something like that. Something like that, yes, Your Honor. So looking at it, she would be a danger to society at 84 years old coming out of prison? Is it really? Your Honor, Judge Titus. District court judge, it's not necessarily the name of the judge is not that important. It's the district court. The district court, you're saying that that would be a danger? She would be a danger, 84 years old, if she survives that? Well, Your Honor, the district court stated at Ms. Martin's sentencing, and I do want to correct something that Ms. Merchandani said. The district court did address Ms. Martin's age at sentencing. He said, you would think by the time you arrived at the age of 60, you would learn not to do these things. If she was a danger to the community at 60, the fact that she committed this offense up into her 60s is what has resulted in a sentence that is ending in her later years. And Judge Titus found that this sentence was the sentence he chose and stood by it. Chavez Mesa wrote, at bottom, the sentencing judge need only set forth enough to satisfy the appellate court that he has considered the party's arguments and has a reasoned basis for exercising his own legal decision-making authority. But you know, look, there's a standard that has to satisfy us that the district court has adequately considered those factors, right? Can you say that? Has to satisfy this court, correct? Correct, Your Honor. So at least there's a standard there, something we have to do. At least satisfaction, at least some metric, right? Correct. And under this court's decision in LaGree, when the issues are fully presented for determination, it is presumed that the district judge has considered these factors. And in this case, the district judge has presided over dozens of these 782 reductions. He understands the extent of his discretion, and he was intimately familiar with both appellants, which was an important factor in this court's decision in LaGree. Appellants here were co-defendants in a massive narcotics trafficking case that spanned many years and involved many kilograms of cocaine, cocaine base, and heroin. The district judge presided over appellants' cases from the beginning, including Mr. Mangwell's guilty plea, followed by Ms. Martin's 42-day jury trial, Mr. Mangwell's sentencing a month later, and then Ms. Martin's sentencing and numerous post-conviction motions filed by each in the intervening years. In the context of this 3582C2 motion, the appellants filed multiple briefs. There were motions for reduction as well as replies. The government filed responses, plus a SIR reply in Mangwell's case. Thus, the issues were fully presented for determination. Counsel, would you concede that she has one of the best records of incarceration that you've seen? I would concede that Ms. Martin has a good record of incarceration. Matter of fact, one of the best you've ever seen. How many people could come have letters from other inmates saying how they were inspired by what she did for them and with them? How many people? I know you represent the government, but is it one of the best you've ever seen? Ms. Martin's record is excellent. Yeah, it's excellent. So what I'm saying is that you have gone adequately, right? That's why she got a life sentence. You're right. All those things you said, it's almost like saying that I may have done all that you said I did, but I'm not who you say I am. And that's the issue of rehabilitation and examining somebody for now. In that sense, whether she should be entitled to a reduction is what she's done since. We know. That's why she got a life sentence. Because all those things you said were true and found. The question is, has she done something to help her life and help others? And I think you'd have to concede that I got you the good and then got you the excellent. I can't get you the best you've ever seen, but I think that's far enough. But in that sense, and you don't address any of those specifically, when do we have any standard for whether or not the court gives any address reduction under the 782? This is a case that I just don't know when. I don't know. Go ahead. Well, Your Honor, you are correct that Ms. Martin had excellent post-sentencing conduct. The district court must consider 3553 effectors and the danger to the community. The court may consider post-sentencing conduct but is not required to. In this case, the district court did consider the post-sentencing conduct as it was presented in multiple filings in motions, replies, pro se motions, motions through counsel, and the district judge certified that he considered those arguments and nevertheless was not persuaded. The district judge is not required to reach a certain result because of an inmate's good behavior. The court may consider it, but the court does not have to engage in ritualistic incantation to prove that he has considered this conduct. Here, however, the district judge wrote in his memorandum that he considered the arguments of the parties, that in particular he considered the reply, which Mr. Mangwell filed long after the district judge had already made his decision, and nevertheless the district judge exercised his considerable discretion and granted the reduction that he chose. If the court has no further questions, I will rest on the government's briefs. Thank you, counsel. Thank you. Submission, Donnie? Thank you, Your Honors. Just to clarify one factual statement that Ms. Cobb stated, it's also in the briefs. Mr. Mangwell's reply wasn't filed. I mean, it was filed technically after the decision, but the process in the district court is motion, response, reply, then decision. In Mr. Mangwell's case, it was motion, response, and before we had a chance to file the reply, we normally have 30 days. The court issued a decision without the reply. I asked for permission to file the reply. That is why it was filed that way. You get 30 days to file a reply? Yes. The judges have certainly loosened up. Yes, I mean, and I should say, you know, there's a lot of these cases, and you were asking earlier about the burden on the court, and I can tell you that the burden, even as low as it is right now, is not great. There's no opening of floodgates by ruling for the appellants here. My office has handled all of the 706, 750, and 782 litigations since 2007. We have filed between 1,000 and 2,000 motions, the overwhelming majority granted, but we've had fewer than five appeals up to this court. Most of them are legal issues. This is the only one that has to do with an insufficient explanation, and including those five is the first time this case was up here. So it's actually four sets of clients that are coming here. So can I ask you, I mean, I'll speak just for myself, extremely compelling case, but I'm not the district judge. So best case for you, we vacate, send it back. The district judge can write an opinion which is 30 pages long and discusses each and every factor, and you have no basis for getting this right. We understand we're stuck with what the district court does, but we also feel confident that once the court is forced to put pen to paper and explain why each one of these factors is so overwhelmed by the seriousness of the offense. I hadn't thought that your argument was that he has to address each one. He doesn't have to address each one. But when the consideration, you all need evidence that he considered it to explain. Just having the district court say to us that it's considered it isn't evidence? Oh, it's a factor. But you all said in blue, slappy, Carter, Lynn, that saying you considered all the factors in and of itself is not enough. I don't know about these others because I can only remember the names of the cases that I wrote the opinion on, and sometimes that fails me. But Carter and Lynn are original sentences. You were on the panel in Carter, actually, both you and Judge Gregory, and in Carter you said you need an individualized analysis. But isn't that an original sentence? That was an original sentence. That's not resentencing. And so is Lynn. Yes, but those inform. To be sure. But then we have this group of cases that deal with resentencing. Hardy-McKenzie. Which set forth a very different kind of examination. It's slightly different. It's not that different. It says you put together the 3582 record and the original record, and when you put them together, you could have a knock. So, yes, this is not an original sentencing. He doesn't have to start from the bottom. He can start from wherever it was. But it has to take into account all the factors that happened in the interim. Now, in LaGrean-Smalls, my colleague, Ms. Cobb, kept saying that LaGrean-Smalls said that it's presumed that you've considered all the factors. It's implicit in the decision. Well, she's leaving out a very important part of the decision. It said it's presumed absent contrary indication, and it's presumed unless there's evidence that the court neglected to consider relevant factors. Those are very important exceptions. And both of those exceptions are why, in Hardy and McKenzie, this court vacated and remanded. And in both cases, it was a partial grant of relief. Neither of them was a denial. And in both of them, new evidence was brought forward showing it's not just post-sentencing conduct. It's showing how the 3553A analysis has dramatically changed. So it's not just we're not just talking about post-sentencing conduct. We're talking about how the 3553A factors have changed in who the person is today, which we know from Pepper you have to judge the person based on who they are today. Do you have new evidence to present on those issues? Yes. I thought you'd already presented this evidence. Well, all of that was presented before, no, but her record, her record of post-sentencing conduct. But that's all in front of us. Yes, yes, yes. It was all before the district court too. Right. But we have no confidence that it was actually considered. And that's what so Chavez Meza, Ms. Cabo also referred to Chavez Meza, and she said it was very similar to this case. All you have to do is check a box. Chavez Meza was a case in which the Supreme Court so clearly limited to the facts of that case, which was that it was a, the court said, given the simplicity of this case, the intuitive reason for the judge's decision to give six months greater than the defendant had asked. It was a 25-year-old defendant who got a six-month greater sentence, and in a stipulated agreement the parties had submitted, he had submitted one, it didn't submit anything, but just said he had taken a class in masonry and construction. I think we, you're right, it's a very limited, but the Supreme Court assertively took it to decide this very issue. They took it to decide the circuit split, and they didn't decide the circuit split, and admittedly the Fourth Circuit is on the side that says you do not have to do very much, but after, you know, almost 2,000 cases, this is the first case in which we agree, you don't have to do very much, but you have to do something. And unless this court is confident, looking at this record, and I don't see how anybody could be, that all of these factors were actually considered, then I think you need to vacate it and remand it. And yes, we are stuck with what the district court does below, unless you decide to send it to a different judge for fresh eyes, which we take no position on, but then that's how it is. So we urge the court to vacate and remand it. Thank you. Thank you, counsel.
judges: Roger L. Gregory, Diana Gribbon Motz, Henry F. Floyd